A95A2222. DURDEN v. THE STATE.
A95A2579. LAWSON v. THE STATE.
(466 SE2d 641)

BEASLEY, Chief Judge.

In a single indictment, Durden and Lawson were charged with aggravated assault upon Bledsoe, OCGA § 16-5-21 (a) (2), aggravated assault upon Payton, OCGA § 16-5-21 (a) (2), armed robbery of Payton, OCGA § 16-8-41 (a), and criminal damage to property in the second degree, OCGA § 16-7-23 (a) (1). In the same indictment, Durden was also charged with aggravated assault on his wife, OCGA § 16-5-21 (a) (2), and Howard was charged with aggravated assault on Payton.

Lawson and Durden were tried jointly, without Howard. Evi-

---

dence showed that officers first responded to a call at Howard's home after midnight to find that Bledsoe had been beaten. The officers also noticed a Chevrolet El Camino in the front yard that had apparently been wrecked, but it did not appear to have any connection with Bledsoe. Although Bledsoe was uncooperative, he was eventually taken away in an ambulance and the officers remained at the scene for a few minutes investigating. About an hour later, another call came from Howard's home and the same officers responded. This time they found Payton lying on a sofa, severely beaten and naked but for a blanket wrapped around him.

Testimony showed that despite the time the calls were made to police, both Bledsoe and Payton had been beaten before police arrived the first time. Before either incident, several people were in the house, and many had been drinking alcohol. Bledsoe made a remark to which Durden took umbrage, and Durden and Lawson proceeded to throw him against a wall and beat him about the face with their fists. After the Bledsoe beating, Durden stated he wished to kill Payton because he had allegedly raped Durden's wife. Howard said not to do that in her house but in the yard. Payton, a sometime resident of Howard's home, was not then present but telephoned sometime thereafter. Howard told him to come and bring his rent money.

When Payton arrived in his El Camino, Durden spoke with him and Howard called for him to come into the backyard, which he did with forceful accompaniment by Durden. There, Durden and Lawson beat him with their fists, smashed his head into a wall and, after he fell to the ground, kicked him in the head. Durden stripped Payton of all his clothes and gave Howard, at her insistence, the two dollars he found in Payton's pockets. After Durden rolled Payton into the bushes, he and Lawson went inside for a time and then out to Payton's El Camino. Durden broke its windows, slashed its tires, and otherwise damaged the vehicle to an extent it would cost over $500 to repair. Then they left. It was apparently after this that Durden, at a different location, struck his wife on the head with a beer bottle and slapped her.

Only after Durden and Lawson had left did anyone call for assistance for Bledsoe. While the officers were at the scene on that call, no one told them about Payton's beating and they did not discover him in the backyard bushes. Sometime after the officers left, Payton called for help from the bushes and medical and police assistance was again called. Payton was hospitalized for more than two weeks, had no memory of the events, and could not identify his attackers; Bledsoe also testified that he had no memory of his attack.

The jury returned guilty verdicts against Durden on all three aggravated assaults, criminal damage to property in the second degree, and robbery by force as a lesser included offense of armed robbery.

See OCGA § 16-8-40 (a) (1). The jury found Lawson guilty of both aggravated assaults with which he was charged, and guilty of robbery by force, but not guilty of criminal damage to property in the second degree. Durden and Lawson appeal.

*Case No. A95A2579*

1. Investigating officers testified that Howard, during their first visit, told them Bledsoe had been beaten by Durden and "a friend." During the second visit, she told them Payton had been beaten by "the same guys," naming both Durden and Lawson. She was inconsistent and sometimes evasive while giving these reports and did not testify at trial. Lawson contends allowing the State to introduce testimony about her statements to police was a violation of his rights under the confrontation clause of the Sixth Amendment to the United States Constitution.

We need not decide if there was such a violation because any error in allowing the officers to testify as to Howard's statements was clearly harmless. See *McDonald v. State*, 210 Ga. App. 689, 691 (2) (436 SE2d 811) (1993). Two eyewitnesses to the beatings described, in much greater detail than Howard gave the police, the assaults on Bledsoe and Payton. See *Jones v. State*, 265 Ga. 84, 86 (4) (453 SE2d 716) (1995). We do not hesitate to conclude that the officers' testimony about Howard's statements at the scene during their investigation had little if any effect on the jury's verdict. Id.

2. Lawson moved the court to sever trial of Count 5, Durden's assault on his wife, from the rest of the charges in the indictment. Count 5 affected only Durden, but Lawson did not move to sever his trial from Durden's. Compare *Hayes v. State*, 182 Ga. App. 26, 27 (1) (354 SE2d 655) (1987). Lawson cites no authority for the proposition that he can move to sever one count addressed solely to his co-defendant while never moving to have the co-defendant's trial severed from his own, see OCGA §§ 16-1-7, 17-8-4, and we find none. To allow such a motion would permit one co-defendant to attempt to control the rights and trial strategy of another. Lawson's rights in regard to Count 5 were limited to a motion to sever his trial from Durden's under OCGA § 17-8-4. Lawson made no such motion and there was no error.

3. Lawson also contends the evidence was not sufficient to convict him of aggravated assault but only, at most, simple assault. OCGA § 16-5-20 (a). Although he contends there was little testimony about his participation in the attacks, eyewitness testimony was clear that Lawson participated in beating both Payton and Bledsoe. He also argues there was no evidence any offensive weapon was used in the attacks. Aggravated assault encompasses the use of "any object, device,

or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). "While 'fists per se are not a deadly weapon within the meaning of [OCGA § 16-5-21] (cit.), [n]evertheless, they may be found to be a deadly weapon by the jury depending on the manner and means of their use, the wounds inflicted, etc. (Cits.)' [Cit.]" *Harper v. State*, 152 Ga. App. 689, 691 (2) (263 SE2d 547) (1979). The injuries actually inflicted on Payton unquestionably authorized the jury to find them serious; the bones around his eye and cheek were fractured, there was bleeding in his brain, and he was hospitalized for over two weeks. The evidence also showed bodily injuries to Bledsoe which the jury could have considered to be serious; he had cuts above and below his eye that left scars. Additionally, the results of the attack on Payton would have justified the jury's concluding that the defendant's fists, used offensively, were likely to cause serious bodily injury to Bledsoe, even if his actual injuries were not considered serious. There was sufficient evidence to convict Lawson of aggravated assault.

### Case No. A95A2222

4. Durden contends the court erred in not severing Count 5, which charged him with aggravated assault on his wife, from the other four counts. His motion in the trial court asked that Count 1 (aggravated assault on Bledsoe) be severed from the other assault counts because it was not connected with them and had no common elements of substantial importance with them. Durden did not ask the court to sever Count 5. As discussed in Division 2, Lawson moved the court to sever Count 5, but the record does not show Durden ever joined in Lawson's motion. As Durden did not seek severance of Count 5 below, he cannot do so on appeal. *McBride v. State*, 213 Ga. App. 857, 858 (3) (c) (446 SE2d 193) (1994).

5. Durden contends the court erred in allowing co-defendant Lawson's statement to police to be read into the record because Lawson did not testify and was not subject to cross-examination about the statement, violating Durden's rights under the confrontation clause of the Sixth Amendment to the United States Constitution. See *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). Although the statement was redacted to eliminate any reference to Durden, he argues other evidence showed Durden and Lawson were together before, during, and after the incidents addressed in Lawson's statement, and it was then clear to the jury that Durden was the man referred to in Lawson's statement. "The implication of another defendant must be direct. It is not a *Bruton* violation if the redacted confession identifies the defendant only through the jury's making connections with other evidence and drawing infer-

ences. [Cit.] ' "(T)he statements *standing alone* must *clearly inculpate* the defendant. (Cits.)" . . . (Cit.)' [Cit.]" (Emphasis supplied.) *Walker v. State*, 213 Ga. App. 407, 413 (7) (444 SE2d 824) (1994). As the only inference identifying Durden with Lawson's redacted statement was through other evidence, there was no error.

6. Durden contends the court erred in allowing Howard's trial to be severed without a written motion being filed, but he cites no authority for the proposition that this would be an abuse of the court's discretion, see OCGA § 17-8-4, and the argument is deemed waived pursuant to Court of Appeals Rule 27 (c) (2). Like Lawson, Durden also contends it was a violation of his confrontation rights to allow testimony concerning Howard's statements to the police. As in Division 1, if there was error, it was harmless.

7. Durden contends the evidence was insufficient to support the conviction under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The eyewitnesses were not interviewed at the scene until the second police visit. According to the officers' testimony, they seemed scared and stated they had seen nothing but had heard some of the commotion. At trial, one eyewitness agreed with the officers' account and gave an explanation for her original statement to the officers, while the other testified he had given the investigating officers the same account he gave at trial. This testimony simply presented an issue for the jury's resolution. *Cantrell v. State*, 210 Ga. App. 218, 219-220 (1) (435 SE2d 737) (1993). There was evidence sufficient to support the conviction. *Jackson*, supra; *Jacobs v. State*, 207 Ga. App. 714, 716 (3) (429 SE2d 256) (1993).

*Judgments affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED DECEMBER 20, 1995.

*James M. Cranford*, for appellant (case no. A95A2222).

*Sinnreich & Francisco, John R. Francisco*, for appellant (case no. A95A2579).

*Charles H. Weston, District Attorney, Thomas J. Matthews, Kimberly S. Shumate, Assistant District Attorneys*, for appellee.