

SUPREME COURT OF GEORGIA

November 2, 2022

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

Upon consideration, the Court has revised the deadline for motions for reconsideration in this matter. It is ordered that a motion for reconsideration, if any, including motions submitted via the Court's electronic filing system, must be **received in the Clerk's Office by 2 p.m. on Wednesday, November 9, 2022**.

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

_Therese S. Barnes_ , Clerk

In the Supreme Court of Georgia

Decided: November 2, 2022

S22A0498. WINSLOW v. THE STATE.

BETHEL, Justice.

William Sanford Winslow was convicted on four counts of sexual exploitation of children in connection with his possession of two videos depicting children engaged in sexually explicit conduct. The videos were found on his laptop computer by law enforcement. On appeal, Winslow raises three enumerations of error: (1) the trial court erred by denying his motion to suppress evidence obtained from a search of his laptop; (2) facial and as-applied challenges to the sentencing scheme of OCGA § 16-12-100 (f) (1); and (3) the trial court erred by failing to merge all counts of the indictment together for sentencing under *Edvalson v. State*, 310 Ga. 7 (849 SE2d 204)

1

(2020).[1]

For the reasons set forth below, we affirm Winslow's convictions. However, because the trial court should have sentenced Winslow on only one count and merged the remaining counts for sentencing, see *Edvalson*, 310 Ga. at 8, 10, we vacate the sentences imposed by the trial court and remand for resentencing. And, because we vacate these sentences, we do not reach Winslow's as-applied challenge to OCGA § 16-12-110 (f) (1).

---

[1] An officer with the Forsyth Police Department confiscated a laptop containing explicit videos from Winslow on November 4, 2018. On May 11, 2021, Winslow was indicted by a Monroe County grand jury for four counts of sexual exploitation of children (Counts 1-4). Counts 1 and 3 were both based on the possession of the same video. Counts 2 and 4 were both based on the possession of a second, different video. The Counts differed in the date of possession. Counts 1 and 2 were based on Winslow's possession of both videos on November 4, 2018, the date the laptop was seized. Counts 3 and 4 were based on Winslow's possession of both videos on September 15, 2018, the date the videos were downloaded to the laptop.

At a jury trial held in September 2021, Winslow was found guilty of all counts. The trial court sentenced him to a total of 35 years, with the first 20 years to be served in confinement and the remaining 15 years to be served on probation. This sentence included 15 years in confinement for Count 1 and 20 years (five years served in confinement with 15 years on probation) on Count 2 to serve consecutively to Count 1. The trial court merged Count 3 with Count 1 and Count 4 with Count 2.

Winslow filed a timely notice of appeal directed to this Court, raising constitutional challenges to OCGA § 16-12-100. The case was docketed to this Court's April 2022 term and submitted for a decision on the briefs.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On November 4, 2018, Sergeant David Asbell with the Forsyth Police Department responded to a call from a Walmart in Monroe County because a man, later identified as Winslow, was printing photographs that were making a store clerk uncomfortable. Winslow was attempting to purchase five printed photos from the self-serve printing kiosk, and each photo depicted different children, and one computerized depiction of a child, presented in a manner that is fairly described as sexualized in nature. The employee also observed Winslow attempt to hide the photos from view when another Walmart patron asked if the children in the photos were Winslow's.

After arriving at the store, Sergeant Asbell approached Winslow, whom the Sergeant already knew, and asked to speak with him outside the store. Winslow told Sergeant Asbell that the photos were of members of Winslow's family, but Sergeant Asbell knew Winslow's family and testified that he knew that these children were not members of Winslow's family. Sergeant Asbell then asked

Winslow if he had "any other photos that would be images that he shouldn't have," and more specifically, whether he had any other pictures of children. Winslow responded that he did not, and he told Sergeant Asbell that he could check. Sergeant Asbell asked if he could open Winslow's bag to check. Winslow said "yes" but that there was "nothing there."

When Sergeant Asbell looked in the bag, he noticed a laptop computer. While present with Winslow, Sergeant Asbell attempted to turn the laptop on but was unable to access any information on the computer because it had trouble starting. The record before us does not indicate whether Sergeant Asbell asked Winslow whether he could check the contents of the laptop. Likewise, the record is silent as to whether Winslow did or said anything while Asbell was attempting to access the information on the laptop.

Continuing his search of the contents of Winslow's bag, Sergeant Asbell found seven thumb drives. Sergeant Asbell asked Winslow if there was anything on the thumb drives, and Winslow responded that the thumb drives were empty but that Sergeant

Asbell could check them. Sergeant Asbell then checked three of the thumb drives by plugging them into his own laptop. The first drive only contained an installer program for Microsoft windows, and the second thumb drive was blank. The third thumb drive, however, contained a folder labeled "Billy's porn" with two media files in it. The first file contained photographs of Winslow. Sergeant Asbell described the second file as containing multiple images of naked children. After viewing these photos, Sergeant Asbell ended his search of the thumb drives and arrested Winslow for sexual exploitation of children.

The GBI searched Winslow's laptop roughly 14 months later following the issuance of a warrant. The GBI attributed the delay in searching the laptop to a backlog of other tasks. During that search, an agent found two videos containing what the agent considered to be child pornography. Digital records showed that both videos were downloaded to Winslow's laptop on September 15, 2018 at 1:15 a.m.

Winslow moved to suppress all of the electronic evidence, arguing that the search was conducted without his consent and with

an invalid warrant. More specifically, he argued that his consent did not extend to a full forensic search of the laptop and had long expired. Additionally, Winslow argued that the warrant[2] had expired before the GBI search of the laptop commenced because of a ten-day execution requirement both within the warrant itself and pursuant to OCGA § 17-5-25; that the warrant was void because it was obtained in a different judicial district than where the evidence was housed; and the affidavit supporting the search warrant lacked probable cause.

Following a hearing, the trial court denied the motion to suppress. The court determined that Winslow consented to the search of his laptop, that his consent was never withdrawn, that the search was valid, and that the search was conducted in a reasonable amount of time.

2. Winslow challenges the trial court's denial of his motion to

---

[2] The warrant was issued by a Judge of the Superior Court of Monroe County on February 4, 2020. It authorized a search of the laptop, seven thumb drives, and a cellphone seized from Winslow on November 4, 2018, for child pornography. The warrant noted that the evidence was located in DeKalb County at the time the warrant was issued.

suppress, arguing that he did not consent to the search of his laptop and that the State did not have a valid search warrant for the laptop because the warrant had expired, it was issued in a different county than where the evidence was located, and the supporting affidavit lacked probable cause. For the reasons explained below, we conclude that the court did not err in finding that Winslow consented to the search.

> It is well settled that a valid consent to a search eliminates the need for either probable cause or a search warrant. In order to justify a warrantless search on the grounds of consent, the State has the burden of proving that the consent was freely and voluntarily given under the totality of the circumstances. It is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced.

(Citations and punctuation omitted.) *Brooks v. State*, 285 Ga. 424, 425-426 (677 SE2d 68) (2009). "[T]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness – what would a typical reasonable person have understood by the exchange between the officer and the suspect?" (Punctuation omitted.) *State v. Turner*, 304 Ga. 356, 360

7

(1) (a) (818 SE2d 589) (2018). Further, constrained by that limitation, "[o]nce consent is legally obtained, it continues until it is either revoked or withdrawn." *Woods v. State*, 258 Ga. 540, 542 (2) (371 SE2d 865) (1988).

This Court will not disturb a trial court's findings of fact in ruling on a motion to suppress unless they are clearly erroneous.[3] See *Doleman v. State*, 304 Ga. 740, 743 (2) (822 SE2d 223) (2018). When reviewing the trial court's findings of fact, "this Court

---

[3] It is not entirely clear whether a determination of the scope of consent to search provided by a suspect is a question of fact to be determined solely by the trial court or a question of law that we consider de novo. Compare *Varriano v. State*, 312 Ga. App. 266, 268-269 (718 SE2d 14) (2011) (reviewing the trial court's determination of the appellant's scope of consent for clear error), *United States v. Watkins*, 760 F3d 1271, 1283 (1) (11th Cir. 2014) (noting that the district court's finding that "unlimited consent to a search of [the appellant's] computers [was given] was not clear error"), and *United States v. Martel-Martines*, 988 F2d 855, 858 (II) (8th Cir. 1993) (noting that the scope of a suspect's consent to search is reviewed for clear error), with *Martinez v. State*, 347 Ga. App. 675, 683 (C) (ii) (820 SE2d 507) (2018) (noting that although "reviewing the reasonable scope of the search will largely be a fact-specific inquiry," that "determination remains a question of law that we review de novo"), and *United States v. Stewart*, 93 F3d 189, 192 (I) (5th Cir. 1996) (determining that the scope of a suspect's consent to search "is a question of law reviewed de novo"). But Winslow has not argued that this is a question of law, and instead the parties have litigated the question as a fact-intensive one. So although we take the arguments as they come and treat it as a question of fact in this case, this opinion should not be understood as deciding the thorny question of which standard of review is properly applied in future cases.

construes the evidence most favorably to upholding the trial court's findings and judgment and will not disturb the trial court's findings of fact if there is any evidence to support them." Id. "[T]he trial court's application of the law to undisputed facts is subject to de novo review. . . ." (Citation omitted.) *State v. Palmer*, 285 Ga. 75, 78 (673 SE2d 237) (2009).

Here, the trial court found that Winslow consented to the search of his bag and all of its contents, including digital information contained on the laptop, and that this consent was never withdrawn. The record contains evidence supporting those findings. Specifically, the evidence shows that Winslow knew that Sergeant Asbell was searching for photographs of children and Winslow gave him permission to check his bag, which contained his laptop. When searching the bag in the presence of Winslow, Sergeant Asbell attempted to search the digital contents of Winslow's laptop, and there is nothing in the record that indicates that Winslow ever complained or told Sergeant Asbell that he could not search the laptop itself. See *United States v. Harris*, 928 F.2d 1113, 1117-1118

(IV) (11th Cir. 1991) (noting that "importantly, [the defendant] was physically present while [the officer] searched the car, and had ample opportunity to limit the scope of the search, or request that it be discontinued" while concluding that the district court reasonably found that the defendant's consent extended to a search of luggage in the trunk of a car); *Lance v. State*, 275 Ga. 11, 20 (19) (560 SE2d 663) (2002) (rejecting a claim that a search was unlawful because a signed form granting consent to search was too generalized and noting that the appellant "attended the actual search and never withdrew his consent"), disapproved on other grounds by *Willis v. State*, 304 Ga. 686, 706 (11) (a) n.3 (820 SE2d 640) (2018); *Bohannon v. State*, 251 Ga. App. 771, 773 (2) (555 SE2d 112) (2001) (concluding that no error occurred where the trial court concluded that the defendant's consent to search a garage encompassed a locked toolbox located inside the garage, noting that the appellant was "present and watching . . . [but] did not register any objection to the officers'

search").[4]

The record also shows that, moments later, in response to Sergeant Asbell's query concerning the contents of the thumb drives, Winslow gave express permission to search the drives, which had also been in the bag. After observing images of naked children stored on one of the thumb drives, Sergeant Asbell seized Winslow's belongings, including his laptop, and arrested Winslow for sexual exploitation of children.

The laptop was searched by the police roughly 14 months later. There is no evidence that Winslow made any attempt to withdraw or revoke his consent at any point during the roughly 14 months that the State had custody of the laptop before it was searched or that he ever indicated to Sergeant Asbell or anyone else that he had not

---

[4] Winslow's silence alone would not be sufficient to establish consent without the other facts indicating the context of his expressed consent for Sergeant Asbell to search Winslow's bag, which contained the laptop, for pictures of children. See *Turner*, 304 Ga. at 361-362 (1) (b) (concluding that "the record supports the trial court's conclusion that [the defendant] did not voluntarily consent to the search of her home" where she "merely acquiesced to the authority of law enforcement" without more). But Winslow's failure to object to the search of the laptop after giving consent to search the bag and its contents is a fact that the trial court was authorized to consider in its analysis.

consented to a search of the laptop.

Thus, in light of Winslow's consent for Sergeant Asbell to search all of the contents of his bag, containing the laptop, for pictures of children; Winslow's express consent for Sergeant Asbell to search the thumb drives contained within the bag; and the lack of evidence that Winslow objected or did anything while Sergeant Asbell attempted to search his laptop in his presence, it was not error for the trial court to determine that a reasonable officer would have understood Winslow's statements and actions to constitute consent to a search of his laptop. Cf. *Florida v. Jimeno*, 500 U. S. 248, 250-251 (111 SCt 1801, 114 LE2d 297) (1991) (holding that a defendant's consent to "search his car [for narcotics] . . . [without] any explicit limitation on the scope of the search" extended to a search of a paper bag on the floor of the car because a "reasonable person may be expected to know that narcotics are generally carried in some form of a container"); *United States v. Plascencia*, 886 F3d 1336, 1342-1343 (11th Cir. 2018) (concluding that the district court did not err in finding that the defendant's consent for law

12

enforcement to conduct a "complete search of his boat and to [the] seizure of its contents for any legitimate law enforcement purpose" was not exceeded by law enforcement conducting a forensic analysis of a GPS found on the boat (punctuation omitted)); *Berry v. State*, 318 Ga. App. 806, 808-809 (1) (734 SE2d 768) (2012) (concluding that a search of hidden compartments within a car did not exceed consent provided because the appellant was aware that the officer was looking for "illegal or dangerous items within the truck" and therefore the consent extended to "even hidden compartments in the truck to find contraband"); *Varriano v. State*, 312 Ga. App. 266, 269 (718 SE2d 14) (2011) (concluding that the trial court did not clearly err in denying the appellant's motion to suppress because the consent to search was not exceeded by the officer opening closed packages and containers because the officer "inquired about the presence of drugs" and obtained "consent to search the entire vehicle"); *McGaughey v. State*, 222 Ga. App. 477, 479 (474 SE2d 676) (1996) (concluding that a reasonable person could have understood the scope of appellant's consent to include a search of a medicine

13

bottle within her purse when, in response to an inquiry about her presence in a "drug area," appellant told an officer that he could "search [her]" while holding up her purse).

Even though the trial court's determination that Winslow consented to a search of his laptop is supported by the record, we must also consider whether the trial court properly considered the 14-month delay between when Sergeant Asbell seized the laptop and when the GBI forensically searched the laptop. The record does not reveal an explicit trial court finding either way with respect to whether the scope of the consent Winslow provided extended beyond the initial encounter with Sergeant Asbell to include the following 14 months leading up to the actual search of the laptop by the GBI. Rather, in finding that the search was valid on the basis of Winslow's consent, the trial court stated when issuing its oral ruling at the hearing that Winslow's "consent was never withdrawn."

While, as noted above, we have stated that "[o]nce consent is legally obtained, it continues until it is either revoked or withdrawn," see *Woods*, 258 Ga. at 542 (2), that statement should

14

not be understood to allow a potentially infinite duration whenever a person's consent to a search is obtained.[5] Instead, the duration of the consent, as well as other factors like geographic and physical limitations and how extensive the search may be, is limited to what an objectively reasonable person would have understood the scope of the consent to include, based on the "exchange between the officer and the suspect. . . ." *Turner*, 304 Ga. at 360 (1) (a). Here, that inquiry requires the trial court to determine whether a reasonable person would have understood from the circumstances of the interaction with Sergeant Asbell that the consent to search the

---

[5] This quotation from *Woods* can be easily misused to stand for the proposition that all consent to search is perpetual until revoked or withdrawn. See *Wilson v. State*, 308 Ga. App. 383, 385 (2) (b) (708 SE2d 14) (2011) (applying *Woods* to find that the appellant's consent was still valid for a second search of his car during the same traffic stop because "[a]bsent any evidence to the contrary, we cannot assume that the consent was not applicable to the second search made a short time later to seize what had already been admitted to"). But, the rule that consent "continues until it is either revoked or withdrawn" is only true when we remember that all consent to search remains governed by an objective standard of reasonability. Thus, by way of example, if an officer obtains consent to search a vehicle and completes the search, the officer may not, upon encountering the vehicle in a parking lot the following week, search it again on the theory that the consent obtained had not been revoked or withdrawn. Rather, the ordinary consent to the search of a vehicle would be understood to terminate upon the completion of the search.

laptop extended beyond that interaction, to include a forensic search of the laptop by the GBI 14 months later.

In conducting its review of the scope of Winslow's consent, the trial court was not only authorized to consider the circumstances recounted above surrounding Winslow's consent but also that Winslow could reasonably be found to be aware that his laptop was already in the possession of law enforcement and could be in the State's continuous possession from that point on. Therefore, there was evidence to support a finding that a reasonable person would have understood Winslow's consent to include a delay for the laptop to be forensically searched. See *Turner*, 304 Ga. at 360 (1) (a). Additionally, once the trial court determined that the scope of Winslow's consent encompassed a later search of the laptop, the trial court was authorized to consider that there was no evidence that Winslow ever attempted to withdraw or revoke this consent and find that his consent was ongoing at the time the GBI searched the laptop 14 months later. *Woods*, 258 Ga. at 542 (2).

Of course, we presume that trial judges "know the law and

16

apply it in making their decisions, absent some indication in the record suggesting otherwise." (Citation and emphasis omitted.) *State v. Abbott*, 309 Ga. 715, 719 (2) (848 SE2d 105) (2020). Here, the trial court made its findings and denied Winslow's motion to suppress subject to *Turner*'s articulated standard that the "scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness. . . ." 304 Ga. at 360 (1) (a). Therefore, given the lack of any indication in the record to the contrary, we presume that the trial court properly applied that standard when reviewing the scope and duration of Winslow's consent here. Thus, we presume that the consent the trial court found to have been obtained and not withdrawn included the duration of the 14-month delay, and we review this factual finding for clear error. See *Holmes v. State*, 311 Ga. 698, 705-706 (3) (859 SE2d 475) (2021) (noting that this Court "presume[d that] the trial court knew and applied" a holding by the Supreme Court of the United States because the case was decided before the trial court made its ruling); *Doleman*, 304 Ga. at 743 (2) (stating that a trial court's factual findings on a motion to suppress

17

are reviewed for clear error); *Hughes v. State*, 296 Ga. 744, 747 (1) (770 SE2d 636) (2015) ("[W]e generally must presume that the absence of a finding of a fact that would tend to undermine the conclusion of the trial court reflects a considered choice to reject the evidence offered to prove that fact, especially where there were grounds upon which the trial court properly *could* have assigned no weight to such evidence.").

Like us, the dissent recognizes our obligation to review the record in a way that upholds trial court findings of fact where any evidence was presented to support them. And we acknowledge that the question of whether there are sufficient facts in the record to support the trial court's finding that Winslow consented to the forensic search of his laptop is close. However, we believe that the "the highly deferential '*any evidence*' standard" is met here. (Emphasis supplied.) *Morrell v. State*, 313 Ga. 247, 251 (1) (869 SE2d 447) (2022). The record contains evidence supporting a finding that Winslow was aware that Sergeant Asbell was looking for images of children; he offered a physical search of his bag containing

his laptop for images of children; he witnessed Sergeant Asbell take possession of the bag and all of its contents, including his laptop; he witnessed Sergeant Asbell's failed attempt to gain access to the data on his laptop; and he expressly consented to Sergeant Asbell searching the flash drives that were also in his bag after it was unclear whether he would regain possession of his items within the bag, including the laptop. All of these facts together create a far more extensive picture of Winslow's consent than the dissent's focus on Winslow responding "sure" to Sergeant Asbell's request to search his bag. These facts, in our view, satisfy the requirement that "*any evidence*" be present to support a finding that Winslow consented to a thorough search of the digital media the government had taken into its possession. Further, Winslow witnessed Sergeant Asbell locate images of children on one of the flash drives that he had represented were empty, and he knew that his laptop remained in the possession of law enforcement. While these facts, which we also consider favorably to the trial court's disposition, do not inform the scope of the consent Winslow provided, they are relevant to the trial

court's consideration of whether that consent was withdrawn.

Additionally, while the dissent suggests the need for Winslow's consent to have been found more specifically for a GBI forensic search of the laptop 14 months after its seizure, that demands too much of consent. The standard is what a reasonable person would have believed the consent to encompass. Whether it was the GBI or an IT professional in the police department, Winslow could reasonably be understood to have known that Sergeant Asbell would seek help in completing his failed search of the laptop at some point after his laptop was seized. And whether the search was a forensic search or not, this record supports a finding that Winslow knew that Sergeant Asbell was going to continue his search for images. And the trial court was authorized to find that a reasonable person would understand that the subsequent search may include a forensic search. Additionally, whether the search took place the day, week, month, or year following the items being seized was of no meaningful consequence to Winslow, who did not have possession of the items on any of those days. A reasonable person could be found to have

understood that the items would be subsequently searched and that there may be a delay before law enforcement is able to do so. The fact that this evidence does not seem like enough to convince the dissent that the scope of Winslow's consent extended to the search of his laptop is a separate question from whether there is *any evidence* to support such a finding.

Because the implicit finding that Winslow consented to a subsequent forensic search of his laptop after it was seized is supported by evidence in the record, we cannot say that the trial court erred in denying Winslow's motion to suppress. And because we conclude that the trial court did not err in denying the motion to suppress on the basis of Winslow's consent to the search in question, we need not consider the necessity or propriety of a valid search warrant. See *Brooks*, 285 Ga. at 425. Accordingly, there is no need to review Winslow's remaining arguments on this enumeration.

3. Winslow next argues that the statutory sentencing scheme for possession of child pornography under OCGA § 16-12-100 (f) (1)

is facially unconstitutional.[6] Winslow argues that the mandatory minimum and the maximum sentence provided for possession of child pornography under OCGA § 16-12-100 (f) (1) violate the prohibition against cruel and unusual punishment in both the Eighth Amendment to the United States Constitution and Article I, Section 1, Paragraph XVII of the Georgia Constitution ("Paragraph XVII"). We disagree.

We have recognized that both the Eighth Amendment and Paragraph XVII "prohibit inflicting cruel and unusual punishments[,]" which encompasses "sentences that are grossly disproportionate to the crime committed." (Citations and

---

[6] Winslow also challenges the constitutionality of OCGA § 16-12-100 (f) (1) as applied to him based on his total sentence of 35 years, with the first 20 years to be served in confinement and the remaining 15 years to be served on probation. See *Bello v. State*, 300 Ga. 682, 686 (1) (797 SE2d 882) (2017) ("An as-applied challenge addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party." (citation omitted)). To the extent that Winslow also challenges the constitutionality of his particular sentence (35 years, with the first 20 years to be served in confinement and the remaining 15 years to be served on probation), that challenge is moot because we are vacating that sentence on merger grounds. See *Stewart v. State*, 311 Ga. 471, 478 (3) (858 SE2d 456) (2021) (noting that the appellant's remaining challenges to his sentence were moot because this Court vacated his sentence as to the relevant count).

punctuation omitted.) *Conley v. Pate*, 305 Ga. 333, 335-336 (3) (825 SE2d 135) (2019).

> [A] court engages in a two-step inquiry to determine whether [a] sentence is grossly disproportionate. First, a court compares the gravity of the offense and the severity of the sentence. If this threshold comparison leads to an inference of gross disproportionality, the court proceeds to the next step and compares the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.

(Citations and punctuation omitted.) Id. at 336 (3). Additionally, when reviewing a claim of cruel and unusual punishment under the Eighth Amendment, "courts must defer to the legislature in [determinations of sentencing parameters] unless a sentence is so overly severe or excessive in proportion to the offense as to shock the conscience." (Citation omitted.) *Gordon v. State*, 257 Ga. 439, 440 (2) (360 SE2d 253) (1987).

Winslow complains that the punishment for possession of child pornography imposed under OCGA § 16-12-100 (f) (1) is grossly disproportionate because the statute does not make distinctions for sentencing purposes between possession offenses and those

involving the sale, distribution, or manufacturing of child pornography. He argues that crimes involving possession of child pornography should carry a lighter sentence because they are non-violent crimes and because other criminal statutes, such as OCGA § 16-13-30, provide for lesser sentencing parameters for possession crimes than crimes involving distribution and manufacturing.

However, even though there is no such distinction in OCGA § 16-12-100 (f) (1), the sentencing parameters are not grossly disproportionate to the crime of possession of child pornography, an offense we have long recognized a strong state interest in discouraging. See *State v. Scott*, 299 Ga. 568, 575 (3) (788 SE2d 468) (2016) ("It is evidence beyond the need for elaboration that [the] government has a compelling interest in protecting the physical and psychological well-being of children." (punctuation omitted)). And Winslow has done nothing to demonstrate that the General Assembly's choice to protect the State's significant interest in combatting the production, distribution, and possession of such materials with the range of sentences that can be imposed under

24

OCGA § 16-12-100 (f) (1) or its decision not to distinguish between possession, production, and distribution offenses in any way "shocks the conscience."[7] See *Aman v. State*, 261 Ga. 669, 670 (1) (a) (409 SE2d 645) (1991) ("[A] State's interest in safeguarding the physical and psychological well-being of a minor is compelling. The legislative judgment, as well as the judgment found in relevant literature, is that the use of children as subjects of pornographic materials is harmful to the psychological, emotional, and mental health of the child." (punctuation omitted) (quoting *Osborne v. Ohio*,

---

[7] Although this Court has previously relied on the "evolving standard of decency" standard under the Eighth Amendment in reviewing a claim of cruel and unusual punishment under Paragraph XVII, see *Flemming v. Zant*, 259 Ga. 687, 689 (3) (386 SE2d 339) (1989), we decline to decide today whether Paragraph XVII is properly analyzed under the same lens as the Eighth Amendment. See generally *Conley v. Pate*, 305 Ga. 333, 339-341 (825 SE2d 135) (2019) (Peterson, J., concurring). Winslow has not argued that Paragraph XVII would afford him more protection than the Eighth Amendment nor that Paragraph XVII would apply an easier standard for him to meet. And we see no basis for such an argument. Thus, for purposes of our analysis, we presume that *at most* Paragraph XVII's protections are co-extensive with those afforded by the Eighth Amendment. Therefore, because Winslow cannot show that OCGA § 16-12-100 is unconstitutional under the Eighth Amendment, it follows that he could not make a showing of unconstitutionality under Paragraph XVII. We therefore decline to take this opportunity to consider the precise standard of review for determining whether a sentence constitutes cruel and unusual punishment under Paragraph XVII.

495 U. S. 103, 108-109 (110 SCt 1691, 109 LE2d 98) (1990)). See also *Gordon*, 257 Ga. at 440 (2); *Johnson v. State*, 276 Ga. 57, 62 (5) (573 SE2d 362) (2002). Therefore, given "the requisite deference to the legislative branch's authority to impose punishment based on the mores of society at the time of the crime," we hold that the sentencing parameters in OCGA § 16-12-100 (f) (1) are not grossly disproportionate.[8] *Widner v. State*, 280 Ga. 675, 676 (1) (631 SE2d 675) (2006).

4. Finally, Winslow argues that the trial court erred in failing to merge Counts 1 and 2, which were based on Winslow's simultaneous possession of two videos found on his laptop, for sentencing. The State concedes that this was error, and we agree.

Winslow was found guilty of four counts of sexual exploitation of children. The trial court merged Count 3 with Count 1, which were

---

[8] Although Winslow complains that Georgia is one of only eight states imposing a similar sentencing scheme for the crime of possession of child pornography, because Winslow failed to establish the threshold comparison between the gravity of the offense and the severity of the sentence, there is no need to compare the sentencing parameters of OCGA § 16-12-100 (f) (1) with sentences imposed for the same crime in other jurisdictions. See *Conley*, 305 Ga. at 335-336 (3).

both based on his possession of the first video but on different dates. The trial court also merged Count 4 with Count 2, which were similarly both based on his possession of the second video on different dates. However, the trial court declined to merge Count 1 and Count 2, and sentenced Winslow to 15 years in confinement on Count 1 and five years in confinement with 15 years of probation on Count 2 to run consecutively with Count 1. This was error.

In *Edvalson*, this Court held that OCGA § 16-12-100 (b) (5)[9] only allows for "one prosecution and conviction for the simultaneous possession of multiple items of 'visual media'" and clarified that possession can be simultaneous "regardless of the number of images

---

[9] We note that in July 2022, after *Edvalson* was decided, the General Assembly amended OCGA § 16-12-100. Pursuant to that amendment, OCGA § 16-12-100 (b) (5) now provides that "[i]t is unlawful for any person knowingly to create, reproduce, publish, promote, sell, distribute, give, exhibit, or possess with intent to sell or distribute a visual medium which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct." Additionally, the General Assembly enacted OCGA § 16-12-100 (b.1), which provides that "[f]or any violation of paragraph (5) . . . of subsection (b) of this Code section involving multiple visual mediums, mediums, or materials, each visual medium, medium, or material connected to such violation shall constitute a separate offense." Because the conduct at issue in this case occurred prior the effective date of these changes to the statute, the version of OCGA § 16-12-100 in force at the time *Edvalson* was decided applies.

depicted therein." 310 Ga. at 8, 10. See also OCGA § 16-12-100 (a) (5) (defining "visual medium" as "any film, photograph, negative, slide, magazine, or other visual medium"). Because both Count 1 and Count 2 were based on Winslow's simultaneous possession of the two videos, the trial court erred in failing to merge these counts for sentencing. Therefore, we vacate Winslow's sentence and remand this case for resentencing consistent with *Edvalson*.

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur, except Boggs, C. J., Peterson, P. J., Warren and Pinson, JJ., who dissent.*

PETERSON, Presiding Justice, dissenting.

Imagine that you're talking with a police officer at a Walmart. The officer asks whether you have inappropriate images on your laptop. You say no. He asks, "can I check?" And you say, "sure." I am skeptical that your "sure" can reasonably be understood as consent to a GBI forensic search of the laptop 14 months later. The majority presumes that the trial court's oral ruling (which said nothing of the sort) must have implicitly made such a finding. If it had done so explicitly, on this record, I would probably determine that was wrong. But because I think that the trial court should at least have the chance to articulate any such finding for itself before I conclude it was wrong, I would vacate and remand for the trial court to determine for itself whether it believes such a finding is appropriate. I respectfully dissent.

As the majority correctly explains, the law is that consent continues until withdrawn or until the reasonably understood duration of that consent expires. "A suspect may of course delimit as he chooses the scope of the search to which he consents." *Florida v.*

*Jimeno*, 500 U.S. 248, 252 (111 SCt 1801, 114 LE2d 297) (1991). This includes limiting the duration of the consent to search. See 2 Wayne R. LaFave et al., *Criminal Procedure* § 3.10 (f) (4th ed. Nov. 2021 update) ("Even if it is determined that the consent of the defendant or another authorized person was 'voluntary' within the meaning [of controlling United States Supreme Court case law], it does not inevitably follow that evidence found in the ensuing search will be admissible. This is because it is also necessary to take account of any express or implied limitations on the consent which mark the permissible scope of that search in terms of its time, duration, area or intensity."). "Even when an officer has consent to conduct a search, he violates the Fourth Amendment if he goes beyond the scope of consent." *Fuqua v. Turner*, 996 F3d 1140, 1151 (11th Cir. 2021) (citing *Jimeno*, 500 U.S. at 251). And "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251.

In affirming the denial of Winslow's motion to suppress, the majority relies heavily on the presumption that trial judges have understood and followed the law, absent the record indicating otherwise. See *Edwards v. State*, 301 Ga. 822, 826 (2) (804 SE2d 404) (2017). To have properly applied the law in this case, the trial court's finding that consent permitted a GBI search 14 months later would have required two supporting findings: (1) that the duration of Winslow's consent at the Walmart for Sergeant Asbell to search his laptop was reasonably understood to be for at least 14 months, and (2) the scope of that consent extended beyond consent to search Winslow's laptop in the Walmart parking lot — up to and including that it would have been objectively reasonable to conclude that the scope of that consent extended to a forensic analysis of the computer by the GBI 14 months after Sergeant Asbell seized it. The majority acknowledges that the record does not reveal any trial court finding on either of these points, so any such findings would be merely creatures of our presumption.

I am skeptical that the record would permit us to affirm any

such findings. Sergeant Asbell testified that he asked Winslow "can I check" whether Winslow had other pictures of children on his laptop and thumb drives; Winslow "was, like, sure." Later in his testimony, Sergeant Asbell also recounted the exchange as asking Winslow if he had anything "on the drives" or had any "pictures of kids that you shouldn't have," and that Winslow consented by saying "you can look" or "I [Sergeant Asbell] could check." This testimony seems to me strong evidence that Winslow consented to Sergeant Asbell searching the electronics while at the Walmart; it strikes me as wholly inadequate to support a finding that his consent was reasonably understood as continuing for 14 months and extending to a forensic search by the GBI — by a different person, at a different time and place, using different means. See LaFave, supra ("As a general rule, it would seem that a consent to search may be said to have been given on the understanding that the search will be conducted forthwith and that only a single search will be made."); *United States v. Casellas-Toro*, 807 F3d 380, 391 (1st Cir. 2015) (observing that three-week delay in search of car in FBI custody

32

"approaches the outer limit of a reasonable time to complete a consent search"); *State v. Peterson*, 273 Ga. 657, 659 (1) (543 SE2d 692) (2001) ("Additional investigators or officials may enter a citizen's property after one official has already intruded legally. . . . Of course, the later officials must confine their intrusion to the scope of the original invasion unless a warrant or one of the exceptions to the warrant requirement justifies a more thorough or wide ranging search." (quoting *United States v. Brand*, 556 F2d 1312, 1317 & n.9 (5th Cir. 1977) (punctuation omitted)).

The majority also focuses on Winslow's failure to withdraw his consent to search upon being arrested, suggesting that silence in the face of law enforcement taking his laptop post-arrest was essentially consent. This strikes me not as consent, but acquiescence. Yet "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548-549

33

(88 SCt 1788, 20 LE2d 797) (1968).[10] And the majority's stated assumption that Winslow consented to Sergeant Asbell's search of the flash drives only "after it was unclear whether he would regain possession of his items within the bag, including the laptop" is not reasonably inferred from this record; whether Winslow may have guessed that he would not get his laptop back that day based upon his own subjective knowledge of the images contained on the flash drives is not germane to the objective question of what "the typical reasonable person [would] have understood by the exchange between" him and Sergeant Asbell. *Jimeno*, 500 U.S. at 251.

---

[10] I note that *Bumper* also holds that when a law enforcement officer claims authority to search a home under a warrant, the State cannot later justify the search based on acquiescence in the face of that warrant, because the officer's claim of authority communicates to the occupant that he has no right to resist, a sort of coercion with which there can be no consent. See 391 U.S. at 548-550. "The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all," the Court added. Id. at 549-550. This raises an additional question as to whether the GBI's search of Winslow's laptop can be justified by Winslow's failure to withdraw any consent prior to that search, which purportedly took place pursuant to a warrant. Once the State had secured a warrant, it had a claim of lawful authority to search the laptop — consent or no. So as a matter of logic, it arguably would have made no sense for Winslow to purport to withdraw any consent that extended to that point, since he could not have refused a search in the face of the warrant.

But notwithstanding my misgivings, appellate courts don't make factual findings ourselves in the first instance. I would not conclude the trial court was wrong on the basis that a hypothetical finding that Winslow had given consent continuing for 14 months and extending to a forensic search by the GBI is unsupported by the record. Presuming a finding that we ourselves articulate in sufficient detail to assess and then determining that it is unsupported by the record is, for me, too close to making factual findings ourselves, and may wind up being unfair to the trial court. After all, with the benefit of reviewing more than merely the cold record before us, the trial court might have some reason for such a finding that presently escapes my imagination.[11] Before concluding that no such supportable finding is possible, I would remand for the trial court to make explicit findings that we could then review.

I'll also point out that the only reason we have to resolve this case on consent grounds is that the State may have fouled up the

---

[11] Of course, the mere possibility that such a reason might exist is far too speculative a basis on which to affirm such a hypothetical finding.

eventual search warrant for the laptop, and the search performed thereunder, making it difficult to affirm the trial court's alternative holding that the search performed was done reasonably and under a valid warrant. I share the majority's prudent desire to avoid those hard and novel constitutional questions if not necessary to decide them (which is yet another reason I would vacate). But I would not do so by finding consent where we have little reason to believe that the trial court properly found it. I respectfully dissent from the judgment of the Court. (I do not disagree with anything said in Divisions 3 and 4 of the majority opinion, but I cannot join in the judgment of Division 4 because I would vacate and remand the case as to the motion to suppress, rather than vacating Winslow's sentence and remanding for resentencing at this time. To the extent that Division 3 can be said to have a judgment, I join it.)

I am authorized to state that Chief Justice Boggs, Justice Warren and Justice Pinson join in this dissent.