309 Ga. 715
FINAL COPY

S20A0719. THE STATE v. ABBOTT.

WARREN, Justice.

This is the State's second appeal in this case, which involves Dijon Abbott's indictment for the murder of Marques Eubanks and the assaults of Latrice Nelson and Jeremy Whitehead. In *State v. Abbott*, 303 Ga. 297 (812 SE2d 225) (2018) ("*Abbott I*"), this Court affirmed the suppression of custodial statements Abbott made before being given the *Miranda* warnings;[1] clarified the legal standard for evaluating post-*Miranda* statements made after law enforcement has used a "two-step interrogation technique"; and remanded the case for the trial court to apply that legal standard to Abbott's post-*Miranda* statements. 303 Ga. at 301-305. On remand, the trial court again suppressed the entirety of Abbott's statements, concluding that Abbott had not knowingly and voluntarily waived

---

[1] See *Miranda v. Arizona*, 384 U.S. 436, 471 (86 SCt 1602, 16 LE2d 694) (1966).

his rights under *Miranda*, and the State again appeals. We vacate the trial court's second suppression order and again remand the case, holding that the trial court failed to adhere to our *Abbott I* remand instructions, which explicitly directed the trial court to determine the admissibility of Abbott's post-*Miranda* statements under Justice Kennedy's concurrence in *Missouri v. Seibert*, 542 U.S. 600, 618-622 (124 SCt 2601, 159 LE2d 643) (2004), which was adopted by this Court in *Norwood v. State*, 303 Ga. 78 (810 SE2d 554) (2018) (the "*Seibert/Norwood* standard"). *Abbott I*, 303 Ga. at 304.[2] On remand, the trial court is re-directed to apply the *Seibert/Norwood* legal standard for the limited purpose of determining the admissibility of Abbott's post-*Miranda* statements.

1. *Case history.*

On September 10, 2013, Abbott was indicted by a Richmond

---

[2] In recognizing that *Norwood* adopted as controlling precedent Justice Kennedy's concurrence in *Seibert*, we explained in *Abbott I* that Justice Kennedy's concurrence represented the "'position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Abbott I*, 303 Ga. at 302 (quoting *Marks v. United States*, 430 U.S. 188, 193 (97 SCt 990, 51 LE2d 260) (1977)).

County grand jury for malice murder and other crimes in connection with the shooting death of Eubanks and the aggravated assaults of Nelson and Whitehead. The factual allegations of the case were recounted in *Abbott I*, 303 Ga. at 297-299. As relevant here, those allegations include that on July 18, 2013, Abbott was part of a gunfight between rival gangs that resulted in the shooting death of Eubanks and gunshot wounds to Abbott, Nelson, and Whitehead. The next day, Abbott was identified as a "suspect or person of interest" and sheriff's deputies located and transported him to the office of the sheriff's criminal investigation division, where he was questioned by Sergeant Chris Langford.

After holding a two-part *Jackson-Denno*[3] hearing, which included testimony from Sergeant Langford, the trial court determined that Abbott's interrogation was a "blatant violation of *Miranda*" and ordered the entirety of Abbott's statements suppressed. The State appealed, and we affirmed the suppression

---

[3] See *Jackson v. Denno*, 378 U.S. 368, 376 (84 SCt 1774, 12 LE2d 908) (1964).

of Abbott's pre-*Miranda* statements to law enforcement officials. *Abbott I*, 303 Ga. at 301.

With respect to Abbott's post-*Miranda* statements, we recognized that generally "the existence of a pre-warning statement does not require suppression of a post-warning statement that was knowingly and voluntarily made, unless *Seibert*'s exception to that rule is applicable." *Abbott I*, 303 Ga. at 301 (citation and punctuation omitted); see also *Norwood*, 303 Ga. at 83 ("[*Oregon v. Elstad*, 470 U.S. 298 (105 SCt 1285, 84 LE2d 222) (1985)] sets out the general rule that the existence of a pre-warning statement does not require suppression of a post-warning statement that was knowingly and voluntarily made, while *Seibert* sets out an exception for situations where police employ a deliberate 'question first' strategy.") (citations and punctuation omitted). We reiterated that under the exception of *Seibert*, 542 U.S. 600, statements made after a "'two-step interrogation technique . . . used in a calculated way to undermine the *Miranda* warning'" are inadmissible. *Abbott I*, 303 Ga. at 304 (quoting *Seibert*, 542 U.S. at 622 (Kennedy, J.,

concurring)); see also *Norwood*, 303 Ga. at 84. And we made clear that the legal standard for determining whether law enforcement deliberately engaged in an improper "two-step technique" is set forth in Justice Kennedy's concurrence in *Seibert*, which this Court adopted in *Norwood*:

> [I]n deciding whether law enforcement officers used a deliberate "question first" strategy, the trial court must "consider the totality of the circumstances including the timing, setting and completeness of the prewarning interrogation, the continuity of police personnel and the overlapping content of the pre- and post-warning statements." [*Norwood*,] 303 Ga. at 83, 84 (2) (b). The trial court must also consider, however, evidence as to whether the sheriff or police department had "protocols, customs, or training that required officers to use a deliberate two-step interrogation technique," as well as testimony by the interrogating officer that he either did or did not employ a strategy of deliberately questioning the defendant without *Miranda* warnings in order to solicit a confession, planning to later warn him and ask him to repeat the pre-*Miranda* admission. *United States v. Douglas*, 688 Fed. Appx. 658, 665 (11th Cir. 2017).

*Abbott I*, 303 Ga. at 304 (footnote omitted); see also *Seibert*, 542 U.S. at 621-622 (Kennedy, J., concurring). Because, in suppressing Abbott's post-*Miranda* statements, the trial court "applied a legal standard that this Court subsequently rejected in *Norwood*" and

therefore "did not address the existence, credibility, or weight of any such evidence," "make any findings or draw any conclusion as to whether Langford's two-step interrogation was a deliberate strategy used in a calculated way to undermine the *Miranda* warning," or "consider the totality of circumstances as part of determining Langford's subjective intent pursuant to Justice Kennedy's concurrence in *Seibert*," we remanded the case "so that the superior court may make further findings of fact and apply the correct legal standard, as clarified in our opinion today." *Abbott I*, 303 Ga. at 304-305.

A different judge presided over the case on remand. After holding an additional *Jackson-Denno* hearing that included testimony from Sergeant Langford, the trial court made additional findings of fact and again suppressed all of Abbott's statements, including Abbott's pre-*Miranda* and post-*Miranda* statements. The trial court's order, however, failed to mention *Seibert* or *Norwood* or otherwise indicate that its factual findings were made according to the *Seibert/Norwood* legal standard this Court directed the trial

court to apply on remand.  Indeed, the factual findings section of the trial court's order stated in its entirety:

> The defendant, a seventeen year old high school student, was interrogated in an interrogation room at the Sheriff's Department.  He was shackled to the floor of the interrogation room.  He was not initially advised of his Miranda [r]ights when questioning began.  Testimony from the detective was that he was going to read him his rights afterward and that he totally expected the defendant to try to lie to him.  He further testified that it was not his policy to post [M]irandize and that this was not the policy of the Richmond County Sheriff's Department.  During the interview the defendant repeatedly requested: a pain killer or something; a paper towel to wipe blood; a band aid; to talk to his mother; and to use the bathroom.  The defendant was required to wipe up blood and was asked whether he had [AIDS] or hepatitis.  The defendant was promised that he would be taken to the hospital.  Buccal swabs were taken from him with permission.  He was brought more and more paper towels for bleeding as the interview continued.  The defendant was [M]irandized after he provided a statement.

These findings of fact were immediately followed by a conclusions of law section that stated in its entirety: "The defendant did not, by a preponderance of the evidence, knowingly, intelligently and voluntarily waive his Miranda [r]ights.  The defendant was not properly advised of his Miranda [r]ights.  The defendant's statement

is denied in its entirety and may not be considered by a jury."

2. *The record does not show that the trial court applied the Seibert/Norwood legal standard as directed by this Court in Abbott I.*

In this second appeal, the State contends that the trial court erred in its findings of fact and "in its conclusion that [Abbott's] pre- and post-*Miranda* statements were involuntary." But we do not reach those enumerations of error because the trial court committed a threshold legal error when it failed to apply the *Seibert/Norwood* standard that we directed the trial court to apply on remand in *Abbott I*, 303 Ga. at 305.

Abbott concedes that the trial court's suppression order "is somewhat problematic" because it did not "discuss[ ] to any extent the . . . reasons for remanding this case back to the superior court," and "did not clearly say that the investigator had engaged in an improper 'question first — warn later' strategy in obtaining the disputed statements." He nevertheless argues that this Court must presume that the trial court followed *Abbott I* and applied the correct legal standard because of the general "presumption in favor of the

regularity and legality" of trial court proceedings. See *Hancock v. Oates*, 244 Ga. 175, 176 (259 SE2d 437) (1979); see also 29 AmJur 2d Evidence § 222 (2020) ("When any judicial act is shown to have been done in a manner substantially regular it is presumed that the court complied with the formal requisites for its validity.").

But the presumption that a trial court followed the law is "just that — [a] presumption[ ], which can be rebutted by what is shown in the record." *Johnson v. State*, 302 Ga. 188, 198 (805 SE2d 890) (2017) (reversing denial of defendant's motion for new trial where record showed that the trial court erred by finding that the State's re-creation of a trial transcript under OCGA § 5-6-41 was complete); see also 29 AmJur 2d Evidence § 222 ("Trial judges too are presumed to know the law and apply it in making their decisions, *absent some indication in the record suggesting otherwise.*") (emphasis supplied). And here, the record, viewed as a whole, shows that the trial court did not apply the *Seibert/Norwood* standard to determine the admissibility of Abbott's post-*Miranda* statements.

First, by purporting, among other things, to suppress *all* of

Abbott's statements, even though this Court already affirmed the suppression of Abbott's pre-*Miranda* statements in *Abbott I,* the face of the trial court's second suppression order suggests that the court did not heed this Court's opinion or instructions in *Abbott I.* That inference is further supported by the transcript of the post-remand hearing, where both parties reminded the trial court that this Court had already affirmed the suppression of Abbott's pre-*Miranda* statements and remanded only for reconsideration of his post-*Miranda* statements.

Second, at the same hearing, both parties referenced the *Seibert*/*Norwood* standard that this Court instructed the trial court to apply on remand, but the trial court never acknowledged or referenced that standard, either at the hearing or in its suppression order. For example, the State explicitly referenced *Norwood* multiple times, provided a copy of *Norwood* to the trial court, recited the *Seibert*/*Norwood* standard, and used it to argue why Abbott's

post-*Miranda* statements should not be suppressed.[4]  See *Abbott I*, 303 Ga. at 304 (laying out relevant factors for consideration when evaluating "whether law enforcement officers used a deliberate 'question first' strategy"); *Norwood*, 303 Ga. at 84 (same).  Similarly, although some of Abbott's arguments focused on the more general question of whether Abbott's *Miranda* waiver and statements were voluntary, others related to the *Seibert*/*Norwood* standard.[5]  But the trial court never mentioned or cited *Seibert* or *Norwood* in the post-remand hearing or in its written order.

To be sure, the trial court made two new findings of fact post-remand that can be viewed as aligning with the relevant

---

[4] Specifically, the State contended that "there was a lot more detail given in [Abbott's] statement post-*Miranda*"; that "Sergeant Langford testified that he was not expecting to charge [Abbott].  He saw him as a victim but based on what [Abbott] was saying he Mirandized him because he was worried that he might incriminate himself"; and that "Sergeant Langford testified it's not the policy of the police department, it's not the policy of Richmond County, it's not his own personal policy to attempt to elicit a statement from somebody and then Mirandize them in hopes to get that statement back in. . . .  [T]hat was never his point here."

[5] For example, Abbott's counsel argued that Sergeant Langford engaged in an improper interview strategy of questioning Abbott before providing *Miranda* warnings and "that that's a tactic and technique that they are using to try and force [Abbott] to provide more information."

*Seibert*/*Norwood* analysis: that Sergeant Langford testified he "was going to read [Abbott] his rights afterward and that he totally expected the defendant to lie to him," and that "it was not [Langford's] policy to post [M]irandize and that this was not the policy of the Richmond County Sheriff's Department." But the trial court made no findings about other factors specific to the *Seibert*/*Norwood* standard, such as the "'completeness of the prewarning interrogation, the continuity of police personnel and the overlapping content of the pre- and post-warning statements.'" *Abbott I*, 303 Ga. at 304 (quoting *Norwood*, 303 Ga. at 84). Indeed, the trial court's findings of fact end with the finding that Abbott "was [M]irandized after he provided a statement," without any further findings about the post-*Miranda* interrogation.

Moreover, the trial court's conclusions of law — that Abbott "did not, by a preponderance of the evidence, knowingly, intelligently and voluntarily waive his Miranda [r]ights," and "was not properly advised of his Miranda [r]ights" — sound in a general due-process voluntariness analysis, rather than in a

*Seibert*/*Norwood* analysis that focuses on whether Sergeant Langford's two-step interrogation "was a deliberate strategy, used in a calculated way to undermine the *Miranda* warning," as *Siebert* and *Norwood* require. *Abbott I*, 303 Ga. at 304; see also *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring); *Norwood*, 303 Ga. at 83-84.

Given the trial court's second suppression order, and in light of the record, we cannot say that the trial court "dr[e]w any conclusion as to whether Langford's two-step interrogation was a deliberate strategy, used in a calculated way to undermine the *Miranda* warning" or "consider[ed] the totality of circumstances as part of determining Langford's subjective intent pursuant to Justice Kennedy's concurrence in *Seibert*," as we directed. *Abbott I*, 303 Ga. at 304; see also *Brown v. Caldwell*, 231 Ga. 677, 678 (203 SE2d 542) (1974) (presumption of regularity and legality in trial court proceedings overcome and case remanded). Accordingly, we vacate the trial court's order, again remand this case, and re-direct the trial court to apply the *Seibert*/*Norwood* legal standard to determine the admissibility of Abbott's post-*Miranda* statements. See *Hughes v.*

*State*, 296 Ga. 744, 746 n.6 (770 SE2d 636) (2015).

*Judgment vacated and case remanded with direction.  All the Justices concur, except Melton, C. J., who concurs in judgment only.*

Decided September 8, 2020.

Murder. Richmond Superior Court. Before Judge Roper.
*Natalie S. Paine, District Attorney, Joshua B. Smith, Tyler M. Gray, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.
*Ricardo Bravo, Charles R. Sheppard*, for appellee.