**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: October 15, 2025

S25A0663.  THE STATE v. SIMS et al.

COLVIN, Justice.

Appellees Jaquez Sims and Quaran Jackson were indicted for murder, multiple violations of the Street Gang Terrorism and Prevention Act (the "Gang Act"), and other crimes related to the shooting death of Jaishawn Overstreet.[1] Prior to trial, Sims filed a motion in limine seeking to exclude certain "social media posts" purportedly containing indicia of Appellees' gang association from

---

[1] On September 20, 2024, a Hall County grand jury returned an 18-count superseding indictment against Sims, Jackson, and a third co-defendant, Kyland Williams, who had not yet been arrested at the time of this appeal. The superseding indictment charged Sims and Williams with malice murder (Count 1). It further charged Sims, Williams, and Jackson with felony murder (Counts 4, 11) and aggravated assault with a deadly weapon (Counts 5 and 8). The indictment included 12 counts alleging violations of the Gang Act (Counts 2, 3, 6, 7, 9, 10, 12, 13, 14, 16, 17, 18). Sims was charged in 11 of these counts (Counts 2, 3, 6, 7, 9, 10, 12, 13, 16, 17, 18), and Jackson was charged in eight of these counts (Counts 6, 7, 9, 10, 12, 13, 14, 18). Lastly, the indictment charged Sims and Williams with possession of a firearm during the commission of a felony (Count 15).

admission at his trial, which the court had severed from Jackson's. Following an evidentiary hearing, the trial court granted Sims's motion in part. The State now appeals,[2] arguing that the trial court excluded relevant evidence of Appellees' gang association without performing the analysis required by OCGA § 24-4-403 ("Rule 403").[3] But because we cannot discern the legal basis for the trial court's ruling or conclude that it applied a proper legal standard for excluding the evidence in question, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

1. Overstreet was shot on April 27, 2024, and was pronounced dead two days later. In Appellees' charging documents, the State alleged that Appellees were "associated with the Bloods, a criminal street gang," and that they committed Overstreet's murder "in

---

[2] The State appealed under OCGA § 5-7-1(a)(5) on November 26, 2024. The State's appeal was docketed to this Court's April 2025 term and submitted for a decision on the briefs. On February 7, 2025, Jackson filed a motion to dismiss the appeal. After careful consideration of Jackson's motion, it is hereby denied.

[3] As relevant to the issues on appeal, Rule 403 provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . or by considerations of . . . needless presentation of cumulative evidence." OCGA § 24-4-403.

2

furtherance of said criminal street gang" and "with the intent to maintain or increase [their] status and position in the Bloods."

During their investigation, law enforcement officers obtained Instagram records of two users known as "q.s_5fr" and "45wwaystogetpaid," who the State contends are Sims and Jackson, respectively. After receiving copies of these records, Sims filed the motion in limine that is the subject of this appeal. As relevant here, Sims's motion sought to exclude any "irrelevant, unfairly prejudicial, duplicative and otherwise inadmissible photographs" of "social media posts" that the State planned to submit as evidence of his gang association. Though his motion argued that the "admission of such evidence would be a violation of [his] rights [under] the Georgia and United States Constitution[s]," he did not cite any specific provisions of those constitutions or any other authority.[4]

Sims's motion was heard together with other pre-trial motions

---

[4] Jackson did not join in this motion. Though Jackson separately moved to exclude Appellees' Instagram records, the order at issue on appeal concerns only the evidence admissible at Sims's severed trial. No written order appears in the appellate record regarding Jackson's motion.

during an evidentiary hearing on November 22, 2024.[5] During the hearing, the State tendered into evidence a flash drive containing the entirety of the Instagram records it had obtained. Jackson's Instagram records spanned the period from January 1, 2024, through June 5, 2024, and contained approximately 800 pages of material. Though the State only obtained Sims's records from the week of the shooting — April 22 through April 29, 2024 — his activities produced more than 10,000 pages of data. The State conceded that some of these records were not relevant and therefore not admissible at trial but declined to specify with certainty which portions of the records it intended to introduce. The State did, however, identify one group message (or "text thread") that it claimed was "[t]he most important piece of gang evidence" it had. But rather than extracting this message from the records for review or identifying where in the records the message was located, the State had one of its witnesses describe the message to the court.

---

[5] The trial court heard Sims's and Jackson's motions to exclude social media evidence together at the hearing. Other motions were heard thereafter.

This witness, GBI Special Agent Shilo Crane, was qualified as a gang expert for purposes of the hearing and testified regarding Appellees' social media records. When asked about the text thread referenced by the State, Crane refreshed his recollection of the thread using a report he had prepared, which contained excerpts from it. It appears from the hearing transcript that the portions of the report to which Crane referred were published for review by the trial judge as Crane described them, but the report itself was not tendered into evidence and is not a part of the appellate record.

Using his report, Crane explained that the group message, which included Sims, Jackson, Williams, and other individuals, contained multiple indicators of the participants' membership in the Sex, Money, Murder set of the Bloods street gang. Specifically, Crane testified that it is common for members of the Bloods to display the number "5" prominently in their communications and tattoos, and that many participants in the group message included the number "5" in their usernames. According to Crane, Sims was identified as "q.s_5fr," Jackson was identified as

"45wwaystogetpaid," and Williams was identified as "Kyy5ivee." Other individuals in the thread went by "5nake" and "eliias5." And Crane testified that "45ww," which is found in Jackson's username, references "45 worldwide, one of the subsets of Sex, Money, Murder." Crane further testified that participants in the thread used phrases or words associated with Sex, Money, Murder, such as "Everybody Klip full" and "What's blazing Moe," which often employed purposeful misspellings that substituted 'k' or 'x' in place of the letter 'c.' According to Crane, this substitution is used by Bloods "to show disrespect to the Crips, one of their rival gangs." Crane also described photos and videos in the thread that showed the participants making gang signs with their hands. These signs included the letter "b" for "Bloods," as well as others referencing Sex, Money, Murder founder "Pistol Pete" Rollock.

Lastly, Crane described a video in the thread posted by Williams in which Williams can be seen with a Glock-style handgun that was wrapped in a red bandana, a color associated with the Bloods. According to Crane, the video was posted in the thread the

6

day after Overstreet was killed and included the caption "5nake got burnt last night." Crane testified that the way in which the gun was wrapped in a red bandana, when coupled with the caption, was "indicative of taking credit or basically showing that [Williams's] gang is tied to this power . . . and [Williams] was involved in something."

During the hearing, Appellees argued that the evidence was inadmissible because it was irrelevant, cumulative, and unfairly prejudicial, consistent with Sims's motion.[6] In response to Appellees' claims that the evidence was irrelevant and cumulative, the trial court indicated it would admit as relevant any evidence of gang association, even if it was cumulative.[7] But the court appeared to appreciate Appellees' concerns that it would be unfairly prejudicial

---

[6] Jackson's counsel raised other grounds for excluding Appellees' Instagram records from admission at Jackson's severed trial, but, as mentioned above, Jackson did not join in Sims's motion, and the order at issue only concerns evidence against Sims.

[7] The court explained that if the evidence "falls into the category of being relevant to show association, then it's going to be admissible. . . . Even if there's a million of [these posts], because I think the jurors . . . are going to be hesitant to tag somebody as a gang member unless they are confident that there is evidence there to support it."

to admit a message or post by one member of the group message as evidence against another member without clear evidence that the other member viewed the message or post. The court then orally ruled that only two types of Instagram records would be admissible against each Appellee at his severed trial: (1) messages or posts by the Appellee on trial; and (2) messages to which that Appellee had directly responded. As the court put it, "if somebody posts something and they respond to it, both the post and response are coming in." The remainder of each Appellees' Instagram records was excluded from his severed trial. The court explained its reasoning as follows:

> If somebody else posts something and there's silence on the other side, I'm not going to allow what somebody else posted to . . . be admissible against the person that is silent, because . . . you could infer that they didn't see it or they would have responded to it or that they don't condone it or whatever. *It doesn't seem fair to me, and I'm just dealing on basic fairness here*[.]

(Emphasis added).

Following the hearing, Sims's counsel reduced the court's oral ruling to writing and submitted a proposed order to the court via email on November 23, 2025. The order concerned only the evidence

8

admissible at Sims's trial: Jackson's name is not included in the case style, and the email from Sims's counsel to the court indicated that Jackson's motion would be addressed "by way of a separate [o]rder." The order ruled that

> statements and images referenced in Investigator Crane's report which were expressly written or posted by Defendant Sims are **ADMISSIBLE** as "an indicator of gang association or membership" against Defendant Sims. . . . Absent further order of this Court, all other evidence indicating gang association or membership is **INADMISSIBLE**.

Like Sims's motion, the order did not cite any authority. Nor did it explain the grounds on which it excluded "all other evidence indicating gang association or membership."

The State, which was copied on the email from Sims's counsel to the court, responded, stating that the "order accurately reflect[ed] the Court's ruling on gang/social media evidence"[8] and that it "consent[ed] to form." Accordingly, on November 25, 2024, the court entered the order without alteration except for a handwritten note

---

[8] While we note that there are discrepancies between the court's oral ruling and its written order, these differences were not raised by the parties and are immaterial to the resolution of the issues before us.

indicating that "ADA [Jim] Powers approves as to form."

2. The State argues that the trial court erred by excluding social media messages not written or posted by Sims without applying Rule 403's balancing test, which permits a trial court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice . . . or by considerations of . . . needless presentation of cumulative evidence." OCGA § 24-4-403. The State asks this Court to vacate the trial court's order and remand for a Rule 403 analysis. We agree that the trial court's order must be vacated, but for a different reason: the legal basis for the trial court's ruling on the exclusion of evidence is not clear, and whether that legal basis was a lack of relevance or Rule 403, it is not clear that the court applied the correct legal standards in excluding the evidence.

(a) Before turning to the merits of the State's appeal, we briefly consider two arguments from Appellees concerning waiver. Specifically, Appellees argue (1) that the State waived its Rule 403 argument on appeal by failing to raise that rule below, and (2) that

the State waived its right to object to the order on Rule 403 grounds because it approved the form of the order. Both arguments fail.

i. In their first argument, Appellees contend that because the State never asked the trial court to apply Rule 403, the State cannot now do so for the first time on appeal. But this argument is misguided and ignores the case's procedural history: it was *Sims* who moved the court to exclude "irrelevant, unfairly prejudicial, [and] duplicative" evidence. To the extent Sims's motion sought to exclude evidence as "unfairly prejudicial" and "duplicative," it implicitly invoked Rule 403, notwithstanding his failure to cite that rule (or any other authority). See OCGA § 24-4-403 (permitting, under certain circumstances, the exclusion of evidence that is "unfair[ly] prejudic[ial]" or "needless[ly] . . . cumulative"); see also *State v. Orr*, 305 Ga. 729, 737 n.7 (2019) (explaining that Rule 403 is the "only" rule that "authorizes the exclusion of relevant evidence based on the *court's* evaluation of the 'prejudice' such evidence would cause" and that all other rules within the Evidence Code referring to prejudice are rules of admission, not exclusion). Because Sims

11

moved to exclude the contested evidence under Rule 403 (in substance, if not by name), the trial court was required to consider that rule when adjudicating Sims's motion. And by opposing Sims's motion, the State preserved for ordinary appellate review its objection to the exclusion of the evidence under Rule 403. As such, this waiver argument fails.

ii. Second, Appellees argue that because the State consented to the *form* of the order, the State cannot now take issue with the court's ruling, as stated therein. Specifically, Appellees note that when a party consents to the form of an order, it waives the party's right to "complain of the court's failure to include findings of fact and conclusions of law." *Curran v. Scharpf*, 290 Ga. 780, 781 (2012). Appellees then claim that because the State's argument "insist[s] on *certain* findings and conclusions of law," (i.e., on a ruling in its favor) the State's argument is waived under the principle above. (Emphasis added). But Appellees' premise is incorrect. Here, the State does not challenge the trial court's failure to include express findings of fact or conclusions of law. Instead, the State challenges

12

the substance of the order by arguing that the court failed to apply the relevant law properly. And, as Appellees themselves acknowledge, a party does not waive an objection to the substance of an order when it consents to the order's form. *Curran*, 290 Ga. at 781 ("Where a final order is 'approved by' counsel for both parties in writing[,] it is not approval of the *substance* (result) of the order." (cleaned up) (quoting *Rude v. Rude*, 241 Ga. 454, 455 (1978)). Approval of the form of an order merely indicates that "counsel has seen the proposed order and agrees that it contains what the court orally directed be included in it." Id. Accordingly, Appellees' second waiver argument also fails.

(b) We now turn to the merits of the trial court's decision to exclude certain of Sims's Instagram records. As noted above, Sims's motion in limine sought to exclude his Instagram records as "irrelevant, unfairly prejudicial, duplicative and otherwise inadmissible" because admission "would be a violation of the Defendant's rights according to the Georgia and United States Constitution." The trial court granted that motion in part and

denied it in part. The order, however, offered no express legal basis for doing so: it did not cite any rules of evidence or offer any reasoning in support. Instead, it ordered "that the statements and images referenced in Investigator Crane's report which were expressly written or posted by Defendant Sims are **ADMISSIBLE** as 'an indicator of gang association or membership' against Defendant Sims," and that "[a]bsent further order of this Court, all other evidence indicating gang association or membership is **INADMISSIBLE**."

This Court has acknowledged that a trial court's oral pronouncements "may provide insight on the intent of a later written judgment," though we have also made clear that oral pronouncements of this type are not binding and that any discrepancy between the written judgment and oral pronouncement is resolved in favor of the written judgment. See, e.g., *Williams v. Williams*, 295 Ga. 113, 114 (2014). And although the hearing on Sims's motion in limine—and in particular, the trial court's statements made before they were memorialized in a written

14

order—provide important context and clarity about the trial court's rulings on the evidence it *admitted*, the record is less clear when it comes to the trial court's reasoning with respect to evidence it later deemed *inadmissible*.

To that end, the record shows that during the hearing on Sims's motion in limine, the majority of the parties' arguments—and the focus of the trial court's statements—pertained to the relevance of Instagram posts Sims made or received, with the parties expressly referencing relevance a number of times; the trial court making statements such as: "If it falls into the category of being *relevant* to show association, then it's going to be *admissible*. . . . I'm not going to tie the State's hands when it comes to that" (emphasis added); and the trial court appearing to predicate its conclusion that certain social media evidence was admissible against Sims on relevance grounds.[9]

---

[9] This statement is consistent with the court's later oral pronouncement:

If they are talking — if one of these defendants is talking, it's admissible, and what they are talking about will be admissible. If

15

But the record is considerably less clear as to the trial court's reasoning for excluding "all other evidence indicating gang association or membership." The trial court's order deemed that evidence "inadmissible." But neither the written order nor the hearing transcript reveals a clear legal basis for that conclusion. That is because the reasoning the trial court provided at the hearing appeared to invoke principles of relevance under Rules 401 and 402, and principles of unfair prejudice under Rule 403—without providing an indication of which rule (if either)[10] served as the basis of its ruling, which the court appeared to explain as follows:

> If somebody else posts something and there's silence on the other side, I'm not going to allow what somebody else

they are responding to it — I said if a defendant responds to something, it's admissible against them. If he does the posting, it's admissible against him.

And importantly, it tracks the trial court's written order, which admitted "the statements and images referenced in Investigator Crane's report which were expressly written or posted by Defendant Sims . . . as 'an indicator of gang association or membership' against Defendant Sims."

[10] For example, if the trial court concluded that social media messages that Sims did not post and did not acknowledge were not relevant under Rules 401 and 402, then that could be the basis of the trial court's ruling that such messages were "inadmissible." But it is also possible that the trial court concluded that those messages *were* relevant, but that they should be excluded under Rule 403.

posted to be — go be admissible against the person that is silent, because, you know, you could infer that they didn't see it or they would have responded to it or that they don't condone it or whatever. It doesn't seem fair to me, and I'm just dealing on basic fairness here that that would be admissible against them.

On one hand, the trial court's statement about which evidence would be inadmissible followed a lengthy discussion of the relevance of evidence that the court deemed admissible. From this, it seems that the trial court followed its pronouncement about relevant evidence being admissible with a pronouncement about evidence that is *not* relevant being *inadmissible*.[11] On the other hand, the trial court went on to say—at least with respect to certain evidence the State sought to admit—that it did not "seem fair" to admit that evidence under norms of "basic fairness." In contrast to the court's earlier remarks concerning relevance, these statements might be understood to invoke Rule 403. In short, we cannot ascertain

---

[11] To be sure, the State appeals the trial court's order only on the basis that the trial court excluded evidence without a proper analysis of that evidence under Rule 403. But it is not clear to all of us that the trial court made the threshold finding of relevance that would be necessary before applying Rule 403.

whether the court excluded the disputed evidence for reasons of relevance, unfair prejudice, or on some other legal basis.

And whether the trial court excluded the evidence here on relevance or Rule 403 grounds, we cannot conclude that it applied the correct legal standard for excluding the evidence on either of those possible bases. Even construing the record in favor of upholding the trial court's judgment, it appears to us that the court drew a line between "admissible" and "inadmissible" social media messages and posts rooted at least in part in "basic fairness."[12] But

---

[12] In reviewing the rulings of trial courts, we generally presume the trial court followed the law absent something in the record that suggests otherwise. See *Winslow v. State*, 315 Ga. 133, 140 (2022); *State v. Abbott*, 309 Ga. 715, 719 (2020); *Moore v. State*, 303 Ga. 743, 746 (2018). But the presumption that a trial court followed the law is "just that—a presumption, which can be rebutted by what is shown in the record." *Abbott*, 309 Ga. at 719. See, e.g., *State v. Harris*, 316 Ga. 272, 282-83 (2023) (vacating the trial court's suppression of identification evidence and remanding with instruction to "reconsider the motion under the standards set forth" in this Court's opinion where it was "not clear to what extent the trial court considered the 'critical factor'" of the analysis); *Middleton v. State*, 316 Ga. 808, 810 (2023) (vacating the Court of Appeals's judgment reversing a trial court's order granting a motion to suppress because the grounds for the trial court's ruling were "not clear" and directing that the Court of Appeals "remand the case to the trial court with direction that the trial court clarify" its ruling); *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 306 Ga. 252, 264-65 (2019) (vacating and remanding where the trial court's written order was not clear, "a review of the transcript of the hearing" did "not add clarity" to its written order, and it was apparent that the

18

the decision whether evidence is relevant turns not on "fairness" but rather on whether it has "any tendency to make a fact of consequence more or less probable than it would be without the evidence." OCGA § 24-4-401. And Rule 403 provides that "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. As a result, a trial court conducting a Rule 403 analysis cannot exclude evidence on grounds of "fairness" alone; it must determine that the probative value of the disputed evidence is "substantially outweighed by the danger of *unfair* prejudice" that would be caused by its admission. See id. (emphasis added). Because we cannot conclude that the trial court applied a proper legal standard to exclude the evidence in question—whether that standard was under Rule 401, 403, or something else—the trial

---

trial court did not apply the proper legal analysis).

19

court's judgment must be vacated. See, e.g., *State v. Brinkley*, 316 Ga. 689, 691 (2023) (holding that the trial court abused its discretion by excluding evidence on the grounds that the "prejudicial effect" of the evidence "outweighed" its probative value, without considering whether the probative value was *substantially* outweighed by the danger of unfair prejudice, as required by Rule 403, and vacating and remanding for the trial court to apply Rule 403); *Harris*, 316 Ga. at 278-79 (2023) (vacating and remanding with instructions to "reconsider the motion [in limine] under the correct legal standard" where the trial court "never recited the correct standard under Rule 403" and "erred by applying an incorrect standard in its application of Rule 403").

We accordingly vacate the trial court's order and remand this case to the trial court for further proceedings consistent with this opinion.[13]

---

[13] Nothing in this opinion should be construed to preclude the trial court on remand from directing the State to delineate those portions of Appellees' Instagram records that the State intends to submit at trial for purposes of the court's review and to explain why each post or document is admissible under Rule 403.

*Judgment vacated and case remanded with direction. All the Justices concur.*